OCCIDENTAL FIRE & CASUALTY CO., Plaintiff,

v.

Dean J. KEATING, Wilma Jean Keating, and Phillips Petroleum Co., Mrs. Lee W. Perrier, Administratrix of the Estate of Lee W. Perrier, Deceased, G. W. McCullough, and Betty McCullough, Defendants.

Civ. 65–175.

United States District Court
W. D. Oklahoma.

Oct. 13, 1967.

David J. Morrison, of Rinehart, Morrison & Cooper, Oklahoma City, Okl., for plaintiff.

Edward J. Fauss, Oklahoma City, Okl., for defendant Phillips Petroleum Co.

James W. Connor, of Selby, Neptune & Connor, Bartlesville, Okl., for defendants Mrs. Lee W. Perrier, G. W. McCullough, and Betty McCullough.

## MEMORANDUM OPINION

EUBANKS, District Judge.

On May 19, 1965, Occidental Fire & Casualty Co., Plaintiff, filed a Complaint seeking a judgment declaring that its Commercial Combination Automobile Policy and Oklahoma Corporation Commision Form E Endorsement issued to Dean J. Keating and Neal S. Keating did not afford coverage for a highway accident in which some defendants sustained damages or injuries.

Plaintiff alleges that on November 5, 1964, the insured defendant, Dean J. Keating, was using a 1957 Ford truck tractor (which will be referred to as the "Ford"), a vehicle scheduled and insured under the policy, to tow an unscheduled 1955 Mack truck tractor (which will be referred to as the "Mack") operated by defendant Wilma Jean Keating. These vehicles were involved in a highway accident with a 1964 Oldsmobile sedan driven by Lee W. Perrier and owned by defendant Phillips Petroleum Company and occupied by defendants, Mrs. Lee W. Perrier, G. W. McCullough and Mrs. G. W. McCullough. Mr. Perrier was fatally injured. The defendants, Mrs. Lee W. Perrier, Mr. G. W. McCullough and Mrs. G. W. McCullough, sustained personal injuries. The defendant Phillips' car was extensively damaged.

The plaintiff further alleges that the defendants and each of them contend the plaintiff is obligated to defend claims made by them under the foregoing policy of insurance and to pay judgments, up to the limits of said policy, which may be rendered against Dean J. Keating.

It is alleged in the Complaint that: (1) at the time of the accident the insured Dean J. Keating was not operating or using any motor vehicle under any permit or certificate of public convenience within the meaning of the Oklahoma Amended Motor Vehicle Form E Endorsement, and (2) that the claims being made by the defendants against Dean J. Keating are excluded from the coverage of the insurance policy by paragraph (g) under Exclusions as follows:

"Under coverages A and B, while the automobile is used for the towing of any trailer, vehicle or machine, unless such trailer, vehicle or machine is covered by like insurance in the Company; or while any trailer, vehicle or machine covered by this policy is used with any automobile not covered by like insurance in the Company."

Plaintiff alleges that the 1955 Mack truck tractor was not covered by like insurance issued by the plaintiff company.

By answers, counter-claims and cross-claims the various defendants, except Dean J. Keating and Wilma Jean Keating, assert their respective claims for wrongful death of Lee W. Perrier, personal injuries and property damages, all of which resulted from the alleged negligence of the defendants, Dean J. Keating and Wilma Jean Keating.

The defendants in substance allege or contend that plaintiff's insurance policy CT 137,332 on which plaintiff seeks to have a declaratory judgment provides public liability insurance in the amount of $10,000.00 property damage for each accident and $50,000.00 bodily injuries for each person and $100,000.00 bodily injuries for each accident. They allege 47 O.S.1961, Section 169 requires a liability policy approved by the Oklahoma Corporation Commission be filed with the Corporation Commission for each Class "B" Motor Carrier Permit holder such as the defendant Dean J. Keating, plaintiff's insured. The defendants allege, pursuant to rules and regulations of the Oklahoma Corporation Commission, there was attached to the insurance policy Oklahoma Corporation Commission "Motor Vehicle Form—Form E Insurance Policy Endorsement." It is alleged that the Form E Endorsement provides that no condition, provision, stipulation or limitation in the policy shall affect the right of one injured by the negligence of the insured. The defendants allege that both the 1957 Ford and the 1955 Mack were owned and operated by the insured under a Class "B" Motor Carrier Permit and were covered by the insurance policy and the Form E Endorsement. The claimant defendants allege that the defendants, Dean J. Keating and Wilma Jean Keating, and plaintiff insurance company are jointly liable to them for their respective enumerated damages.

The parties except Dean J. Keating and Wilma Jean Keating, by Trial Stipulation have agreed:

1. Prior to November 5, 1964, plaintiff issued an automobile policy of liability insurance to Dean J. Keating and Neal S. Keating containing what is commonly referred to in the State of Oklahoma as a Form E Endorsement and that Occidental did, pursuant to the various orders of the Oklahoma Corporation Commission and the laws of the State of Oklahoma, file a certificate with the Corporation Commission and became bound by all rules and regulations of the Corporation Commission pertaining thereto.

2. That if coverage as to the claimant defendants, Mrs. Lee W. Perrier, Administratrix of the Estate of Lee W. Perrier, deceased, G. W. McCullough and Betty McCullough is established only by reason of the Form E Endorsement, then the limitations of said endorsement are binding on them.

3. That at some time prior to the date of the accident in question Dean J. Keating and his brother, Neal S. Keating, were engaged in a partnership operating a commercial cattle hauling business under what is commonly known as a Class "B" Permit, and that although the insurance policy referred to and the title to certain vehicles hereinafter referred to might be in the name of the partnership or in the name of Dean J. Keating, individually, that the partnership had ceased to exist and that Dean J. Keating operated the cattle hauling business as a sole proprietorship and that he was the sole owner of the business.

4. That for some period of time prior to November 5, 1964, Dean J. Keating owned a 1957 Ford, which vehicle was specifically enumerated and insured under the policy of plaintiff; also, for some time prior to said date, Dean J. Keating owned a 1948 1½ ton truck and also a 1960 Ford truck, which trucks were licensed with farm license tags by Keating. These trucks were insured by a company other than this plaintiff and through an agency not licensed to write insurance with this plaintiff.

5. That five days prior to November 5, 1964, Dean J. Keating purchased a 1955 Mack and that neither this plaintiff nor its agent was notified of the acquisition of such vehicle prior to the date of the accident, November, 5, 1964.

6. Just prior to November 5, 1964, Dean J. Keating, using the 1955 Mack, was in the process of pulling a trailer loaded with live cattle, intending to deliver the same to Oklahoma City; that said trip was a commercial venture, and same was performed under Class "B" Carrier Permit No. 14946, issued by the Oklahoma Corporation Commission and in full force and effect. During the trip the 1955 Mack became disabled; that on November 5, 1964, Dean J. Keating took his 1957 Ford, attached it by some means to the 1955 Mack, the trailer having been disengaged, and with his wife, Wilma Jean Keating, steering the Mack, attempted to transport both units along the highway, said transportation being for the purpose of furthering his commercial venture. It is agreed that the 1955 Mack was disabled and could not run under its own power and that it was being towed by the 1957 Ford. During this attempt an accident occurred, resulting in injuries to the defendants McCullough, the death of Lee W. Perrier, and causing property damage to the Phillips Petroleum Company.

7. That if the Trial Stipulation should vary from the testimony of the witness, Dean J. Keating, the Court shall accept the statement of the witness and give it such weight and credit as it deserves notwithstanding the Stipulation.

The parties waived a jury trial.

On May 31, 1967, at trial, the defendant Dean J. Keating testified that his business is "general farm and cattle trucks, hauling of livestock" on a commercial basis. He also testified that approximately five days before the accident he purchased the Mack to replace the Ford both in his business and on the Occidental insurance policy. That on November 4th while hauling cattle the Mack, with a semi-trailer attached, broke down. Keating also testified that he proceeded to use the Ford truck tractor to tow the Mack back home or to Ponca City to get the Mack fixed. After acquiring the Mack, Keating planned to dispose of the Ford but had not done so before the accident occurred. Keating also testified on the occasion of hauling the load of cattle to the market that he intended upon arrival at Oklahoma City to notify the Occidental agent that he had acquired the Mack. That Occidental's agent is located within a block of the

Oklahoma City stock yards and that he intended to stop there and give notice of the acquisition of the new vehicle but was prevented from doing so because of the accident and that no notice of acquisition had actually been given.

Dean Keating in his own name owned two farm trucks used on the farm to haul small grain and hay to the barns and fields. The farm trucks were not scheduled under the Class "B" Permit nor were they ever used in the cattle hauling business. The farm trucks were insured in a company other than plaintiff, Occidental.

The circumstances surrounding the accident in question were substantially as follows:

Using the Mack tractor attached to a semi-trailer on November 4, 1964, Dean J. Keating loaded some cattle at a pasture near Red Rock, Oklahoma, which is on State Highway 40 about nineteen miles north of Stillwater. There were sixteen head of cattle in a pen east of Stillwater which were to be picked up. All of these cattle were to be hauled to the stockyards at Oklahoma City. Keating developed engine trouble about four or five miles north of Stillwater. He parked his equipment and got Charley Davis of Ponca City to carry out the hauling job. After the engine failure of the Mack, Keating used the Ford to pull the Mack home. A towing bar was used. Defendant Wilma Jean Keating was steering or guiding the Mack as it was towed by the Ford. When they had gone about four miles to the Long Branch Creek Bridge which is a concrete banistered or railed bridge of three spans, the accident occurred. The outside rear dual rim or wheel of the Mack caught the south end of the bridge. This sprung and bent the rear axle housing causing the Mack to track or veer to the right and this caused the two units to weave. Before Keating could stop and while still on the bridge the collision occurred near the north end of the bridge. The left front end of the Oldsmobile struck the left half of the front end of the Ford which was then at a slight angle to the northwest

and was about three feet west or to the left of the center line of the road.

The plaintiff insurance company contends: (1) the Mack did not become an insured vehicle under its insurance policy, (2) the accident involved is excluded because the insured Ford was being used to tow an uninsured vehicle in contravention of a policy exclusion, (3) the Form E Endorsement does not enlarge the insurance policy, (4) in the alternative, plaintiff contends that if the insured parties are entitled to recover by reason of the Form E Endorsement the liability limits are as stated in the Form E Endorsement for property damage, $1,000.00, and for bodily injury, $5,000.00 for each person not to exceed $10,000.00 for any one accident, and not as provided in the insurance policy in the amounts of $10,000.00 for property damage, for bodily injury $50,000.00 for each person not to exceed $100,000.00 for each accident.

The defendants, G. W. McCullough, Betty McCullough and Mrs. Lee W. Perrier, Administratrix, contend: (1) that plaintiff's alleged insurance policy violations, namely; the Mack was not a newly acquired vehicle, towing, and a use beyond the Class "B" Permit, are not available as defenses for the reason that the Form E Endorsement and 47 O.S.1961, Section 169 negate such defenses and impose absolute liability, (2) that the greater liability limits of the insurance policy prevail over the lesser limits prescribed by the Form E Endorsement.

The defendant Phillips Petroleum Company contends: (1) 47 O.S.1961, Section 169 and the Form E Endorsement nullify the insurance policy exclusion relative to towing a vehicle not insured with plaintiff's company, (2) that Phillips is entitled to recover the full amount of its judgment since the limit for property damage under 47 O.S.1961, Section 169 and the Form E Endorsement is $1,000.00 *unless a larger amount* is specified in the policy. That the policy involved specifies a larger amount for property damage coverage, to-wit: $10,000.00.

The facts and pertinent controlling decisions do not sustain the plaintiff's contention that when the accident occurred its insured Dean J. Keating's use of the insured vehicle, the Ford, to tow a disabled uninsured vehicle, the Mack, constitutes a use of a motor vehicle beyond the authority of the Corporation Commission Class "B" Permit.

The claimant defendants contend that 47 O.S. § 169 and the Form E Endorsement impose liability for any negligent operation of the insured vehicle whether within or without the use contemplated or authorized by a Corporation Motor Carrier Permit.

■ The rule expressed in the pertinent and controlling cases most favorable to the plaintiff is that the operation or use of the vehicle from which the loss occurred must have at least a proximate and necessary connection with an actual operation or use of the vehicle upon the highway.

In Casualty Reciprocal Exch. v. Waggoner Drilling Co., 340 P.2d 490 (Okl. 1949), a drilling rig had been moved from one location to another which was a quarter of a mile off the highway where the rig was unloaded and the truck winch line was being used to raise the mast when the drive chain on the truck broke and the mast fell to the ground resulting in the damages claimed.

The Insurance company contended that the accident did not result from an operation or use of the truck on the highway.

The Oklahoma Supreme Court held in the third syllabus:

"Under liability policy issued to Class B Motor Carrier under permit from Oklahoma Corporation Commission covering injury due to negligence of insured or his employees in 'operation or use' of vehicle, to be within coverage of policy, loss must result from use or operation of licensed vehicle upon highway, but vehicle need not be in actual operation or use upon highway at time loss occurs; it being sufficient if operation or use from which loss occurs has a proximate

and necessary connection with actual operation or use of vehicle upon the highway."

In Jones v. Eppler, 266 P.2d 451 (Okl. 1954), the insured trucking company was employed to move two heavy drilling motors from another location to the location where the plaintiff was working at the time he was injured. The truck hauling the motors in going to the well site was off the highway. The insurance company contended its insured trucking company under these circumstances was not operating as a Class "B" Motor Carrier pursuant to the provisions of 47 O.S. 1941, Sections 161–169 in that the trucking company was not using the public road or highway. In denying this contention the Oklahoma Supreme Court in Syllabus 15 said:

"Under liability policy issued to Class B Motor Carrier under permit from Oklahoma Corporation Commission covering injury due to negligence of insured or his employees in 'operation or use' of vehicle, to be within coverage of policy, loss must result from use or operation of licensed vehicle upon highway, but vehicle need not be in actual operation or use upon highway at time loss occurs; it being sufficient if operation or use from which loss occurs has a proximate and necessary connection with actual operation or use of vehicle upon the highway."

In McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443 (Okl.1952), the trucker under a Class "B" Permit in hauling grain for hire from a wheat field to an elevator traveled over a farm to market road and the fire causing the damages occurred in the field destroying grain on or around the truck, the Court, in allowing recovery, cited with approval the Tenth Circuit Court case of Commercial Standard Insurance company v. Bacon, 154 F.2d 360, to the effect that:

" * * * It is not necessary, however, that the vehicle must be in actual operation or use upon the highway at the time the loss occurs in order to constitute an operation or use of the highway. It is sufficient if the operation

or use of the vehicle from which the loss occurs has a proximate and necessary connection with an actual operation or use of the vehicle upon the highway."

Commercial Standard Ins. Co. v. Bacon, 154 F.2d 360, Circuit Court of Appeals, Tenth Circuit, was a case before Circuit Judges Phillips, Huxman and Murrah with the opinion by Judge Huxman, Held:

"We accordingly conclude that to be within the coverage of the policy the loss must result from an operation or use of the licensed vehicle upon the highway. It is not necessary, however, that the vehicle must be in actual operation or use upon the highway at the time the loss occurs in order to constitute an operation or use of the highway. It is sufficient if the operation or use of the vehicle from which the loss occurs has a proximate and necessary connection with an actual operation or use of the vehicle upon the highway. Thus, it has been held that the operation of cars upon the highway includes not only cars in motion, but also those which in the course of operation were parked or left standing upon the highway; that it included ordinary stops upon the highway as being incidental to the operation; that it included a vehicle while it is stopped in soliciting trade or delivering merchandise.

\* \* \* \* \* \*

In Ehlers v. Gold, 169 Wis. 494, 173 N.W. 325, it was held that an automobile was being operated in the service of a common carrier after it had left the route but while it was being driven along the streets to a shop for repair. It is to be noted, however, that the coverage there required only that the vehicle be operated in the service of the common carrier."

█ It is the opinion of the Court that the use of the insured Ford vehicle involved in a collision out of which the loss occurred was directly, proximately, and necessarily connected with the actual operation upon the highway connected with and in the furtherance of Dean J. Keating's commercial trucking business being performed under his Class "B" Permit issued by the Oklahoma Corporation Commission.

The maximum liability limits existing under plaintiff's insurance policy, the Form E Endorsement thereto and 47 O.S. § 169 must be determined.

Plaintiff contends the maximum limits are fixed by the Form E Endorsement at $1,000.00 for property damage and as for bodily injury $5,000.00 for each person and not to exceed $10,000.00 for any one accident.

The claimant defendants contend that the Form E Endorsement liability limits are merely minimum limits and that since plaintiff issued a policy with greater limits that the greater limits should prevail.

47 O.S.1961, Sec. 169 provides:

"No certificate of convenience and necessity, or permit, shall be issued by the Corporation Commission to any motor carrier until after such motor carrier shall have filed with the Corporation Commission a liability insurance policy or bond covering public liability and property damage, \* \* \* which bond or policy shall be approved by the Corporation Commission, and shall be in such sum and amount as fixed by a proper order of said Commission; and such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable; \* \* \*."

Section 169 was enacted in 1937. The Oklahoma Session Laws of 1961, Page 309, Section 1, enacted 47 O.S.1961, Sec. 176, which provides that:

"The Corporation Commission of Oklahoma is, in its discretion, authorized to permit the filing of certificates of insurance coverage or such form as may be prescribed by the Commission, in

lieu of copies of insurance policies or bonds, as provided in 47 O.S.1951, § 169, * * *."

Acting under the authority of 47 O.S. 1961, Sec. 176, the Oklahoma Corporation Commission, by Order 49821, dated September 19, 1962, effective January 2, 1963, directed the filing and use of an approved form of "Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance." The Certificate of Insurance included in the Trial Stipulation complies with the approved form.

The Form E Endorsement attached to the cross complaints and stipulated as true and correct meets the requirements of the Oklahoma Corporation Commission. See Motor Carrier Rules and Regulations issued February 1, 1963, by the Oklahoma Corporation Commission, pages 20–21.

The Form E Endorsement provides: "No condition, provision, stipulation or limitation contained in the policy or any other endorsement therein, or the violation of the same by the insured shall effect in any way the right of any person * * * injured * * * by the negligence of the insured from the payment to such person of any such judgment, to the extent and in the amount set forth in the schedule shown herein." (Emphasis supplied.)

The schedule contained in said Endorsement provides, in part:

" * * * the insurer shall be liable to each person * * * suffering damages * * * to the extent of such damages sustained, *not exceeding five thousand ($5,000.00) dollars and subject to the same limit, the total liability of the insurer on account of any one accident shall not exceed ten thousand ($10,000.00) dollars."* (Emphasis supplied.)

It is noted that the term "not exceeding" is used rather than the term "not less than" relating to the prescribed limits for bodily injuries. This language clearly and unequivocally sets maximum and not minimum liability limits for bodily injuries. The Legislature granted the Corporation Commission the right to set these limits and the Corporation Commission has acted accordingly.

To defeat the foregoing language of the Form E Endorsement, the claimant defendants Perrier and McCulloughs cite and rely on the case of Stanley v. Mowery, 201 Okl. 480, 207 P.2d 277 (1949). This case does not appear to be controlling but is distinguishable from the case at bar. In the opinion in Stanley v. Mowery, supra, the Supreme Court was dealing with a policy of insurance which was filed with the Corporation Commission under the then existing orders of the Commission. In that case the face of the policy, as filed, showed legal liability limits of $10,000.00 and $20,000.00 while the attached Form E Endorsement schedule created liability limits of $5,000.00 and $10,000.00. The case of Stanley v. Mowery, supra, occurred prior to the enactment of 47 O.S.1961, Sec. 176, which statute requires the filing of a certificate of insurance rather than a policy of insurance. The certificate of insurance contains no scheduled liability limits. Stanley v. Mowery, supra, recognizes the statutory powers of the Corporation Commission to prescribe liability limits:

"We do not herein question the authority of the Corporation Commission under the statute to fix a limit of liability of $5000 for application to cases such as this * * *."

But in Stanley v. Mowery, supra, the Court held that because the policy of insurance of greater limits has actually been filed by the insurance carrier that:

" * * * we conclude that thereby the Corporation Commission fixed the minimum liability at $5,000 but with provision that a motor carrier and his insurer could in their discretion or on 'electing' so to do *issue and file* an insurance policy providing for greater coverage, and we conclude that in the instant case *the filing of the $10,000 policy* was effective to provide coverage of liability up to that sum * * *." (Emphasis supplied.)

There is a distinction between the facts of Stanley v. Mowery, supra, and this case. In the former the company had actually filed a policy with greater limits. In the present case no policy of insurance was ever filed with the Corporation Commission.

In the Mowery case it is said that the Corporation Commission had the authority to fix liability limits "by a proper order" but had failed to do so and that the limits expressed in the insurance policy therefore controlled. As applicable to the present case, it appears that the Corporation Commission has clearly by proper order approved the Form E Endorsement which fixes liability limits not minimum but limits "not to exceed."

The claimant defendants, Perrier and McCulloughs, contend that even without the Form E Endorsement the Mack truck became an insured vehicle under the additional auto provisions IV(a) of the basic policy:

"IV. Automobile Defined, Trailers, Two or More Automobiles, Including Automatic Insurance:

(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

(1) Described Automobile—the motor vehicle or trailer described in this policy;

(2) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(3) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

Having concluded that the accident is within the insurance coverage under the policy and Form E Endorsement because the operations or functions being performed at the time were incidental and necessary to the insured's commercial operation, the Ford, a vehicle scheduled in the insurance policy, would be clearly covered. The fact the Mack was not listed in the policy as an insured vehicle is insufficient to exclude insurance coverage because one of the very purposes of the Form E Endorsement is to afford coverage to a vehicle used in the business of a holder of a motor carrier permit even though the vehicle is not described or scheduled in the insurance policy.

■ Having concluded that the accident is within the insurance coverage under the policy and Form E Endorsement as pertains to the Ford and the Mack, it is not necessary to determine whether the Mack is an insured vehicle under the additional automobile clause of the policy unless the Court concludes that in such eventuality the Form E Endorsement's lower limits did not apply to the Mack. The Court is of the opinion that even if the Mack is an insured vehicle under both the Form E Endorsement and the additional automobile clause, the Form E Endorsement liability limits apply to the Mack in both situations.

Coverage for additional automobiles in the insurance policy is effectuated by defining a "newly acquired automobile" as an "automobile". This so-called additional automobile clause does not specify the insurance afforded the additional automobile. The insuring clause of the policy determines the protection afforded the additional automobile.

Examination of the policy reveals it is a Commercial Combination Automobile Policy insuring Dean J. Keating and Neal S. Keating, whose business is trucking and farming. The insured automobile named in the policy is a 1957 Ford Truck-tractor C80F7016273 and a 1956 Frue-hauf Semi-trailer 943983 "which will be used for the transportation of livestock, farm commodities, etc., and this insurance covers no other use or operation except occasional pleasure use for the named insured and members of his family residing in his household and other business use in connection with insured's occupation expressed in Item 2 (trucking and farming) * * * ".

The insuring clause provides that Occidental:

"Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and *subject to the limits of liability, exclusions, conditions and other terms of this policy:*

### INSURING AGREEMENTS

1. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile described in Item 5 of the Declarations, and only while being operated for the purposes stated and subject to the limitations in Item 6 of the Declarations.

Coverage B—Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile described in Item 5 of the Declarations, and only while

being operated for the purposes stated and subject to the limitations in Item 6 of the Declarations." (Emphasis supplied.)

Having insured "an automobile" as aforesaid, the policy then defines in the insured "automobile". A portion of the provisions in the policy relating to insured "automobile" are heretofore set out on pages 17 and 18.

The word "automobile" also includes under coverages D, E, F, G, H and I its equipment and other equipment permanently attached thereto.

(b) Semitrailer. The word 'trailer' includes semitrailer.

(c) Two or More Automobiles. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under coverages A and B and separate automobiles as respects limits of liability, including any deductible provisions, under coverages D, E, F, G, H, and I." (Emphasis supplied.)

The parties stipulated that the insurance policy contains the Form E Endorsement which provides:

"The policy to which this endorsement is attached is written under and pursuant to the provisions of the laws of the State of Oklahoma requiring the same and it is to be construed in accordance therewith and the rules and regulations of the Corporation Commission of Oklahoma * * *.

In consideration of the premium stipulated in the policy to which this endorsement is attached, the insurer hereby waives a description of the motor vehicles operated or used in said operation and agrees to pay any final judgment rendered against the insured for personal injuries, including death, or damage to property of others * * * due to the negligence of said assured, his/its agents, or employees, or representatives, in the operation or use of any motor vehicle, whether listed in the

original schedule of motor vehicles filed with the original application for permit or certificate or described in the policy, *or it be an additional substituted or emergency vehicle operated by the assured, his/its agents or employees within the limits of the schedule hereinafter set out.* * * *

No condition, provision, stipulation or limitation contained in the policy or any other endorsement thereon, or the violation of any of the same by the insured shall affect in any way the right of any person * * * injured in his person or property by the negligence of the insured, his/its agents, employees or representatives, or relieve the company from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and *in the amount set forth in the schedule shown herein;* * * *

SCHEDULE

On any motor vehicle operated or used for the transportation of freight or express, or both, the insured shall be liable to each person * * * suffering damages as the result of any accident due to the negligence of the assured, his/its agents, employees or representatives in the use or operation of such motor vehicle to the extent of damages sustained, not exceeding Five Thousand ($5,000.00) Dollars and subject to the same limit, the total liability of the insurer on account of any one accident shall not exceed Ten Thousand ($10,000.00) Dollars." (Emphasis supplied.)

There is nothing in the insurance contract (the policy plus the Form E Endorsement) indicating that greater liability limits shall apply to some unscheduled automobile (the Mack) that may become an insured automobile under the so-called additional automobile clause than applied to the scheduled or listed automobile (the Ford). The additional automobile provision cannot be taken out of context to support a contention that an additional automobile becoming insured thereunder is not subject to the Form E Endorsement for the provision standing alone creates no insurance.

 The Form E Endorsement liability limits relating to property damage contains the following language:

"Provided that the liability for damage to property under this policy shall not exceed One Thousand Dollars ($1,000.00) for any one accident *unless a larger amount is specified in this policy.*" (Emphasis supplied.)

Referring to the policy, it is noted that property damage liability limits are $10,000.00 for each accident. It is the opinion of the Court that the quoted language of the Endorsement entitles Phillips Petroleum Company to recover against the plaintiff the sum of $3,552.70 with interest thereon at 6 percent from April 25, 1966, in accordance with the judgment heretofore rendered in this cause by the Court.

On April 6, 1966, the Court rendered judgment against the defendants, Dean J. Keating and Wilma Jean Keating, in favor of cross-complainants, Grace W. Perrier, Administratrix of the Estate of Lee W. Perrier, deceased, and Betty McCullough and G. W. McCullough, retaining jurisdiction in each instance to receive evidence as to the amount of the damages to be awarded the respective cross-complainants. The Court will later docket this cause for the purpose of receiving evidence as to the amount of the damages to be awarded the respective cross-complainants and in the situation of cross-complainant, Grace W. Perrier, Administratrix of the Estate of Lee W. Perrier, deceased, apportionment of awarded damages to the beneficiaries entitled thereto.

The Court is of the opinion that the insurance policy and the Form E Endorsement constitute a contract of insurance covering the accident involved and that the liability limits of the Form E Endorsement control. That recovery against the plaintiff, Occidental, for all claims for personal injuries including death is limited to a total sum not to exceed $10,000.00.

If the question arises as to the distribution of the proceeds allowed to be recovered against the insurance policy see: 70 A.L.R.2d 416, et seq.

Also, Burchfield v. Bevans, 242 F.2d 239, Oklahoma 1957, 10th Cir., in which the Court decreed a pro rata allocation of the available proceeds.

The Clerk is directed to mail a copy hereof to all counsel of record.